**KOLLER LAW LLC**
David M. Koller, Esq. (Pa 90119)
Jordan D. Santo, Esq. (PA 320573)
2043 Locust Street, Suite 1B
Philadelphia, PA 19103
T: (215) 545-8917
F: (215) 575-0826
davidk@kollerlawfirm.com
jordans@kollerlawfirm.com

*Counsel for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **OCTAVIA GREEN,** | : | **Civil Action No.** |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **Complaint and Jury Demand** |
| | : | |
| **SUMMATION FINANCIAL SERVICES LLC,** | : | |
| | : | |
| **Defendant.** | : | |

**CIVIL ACTION**

Plaintiff, Octavia Green (hereinafter "Plaintiff"), by and through her attorney, Koller Law, LLC, bring this civil matter against Defendant Summation Financial Services LLC (hereinafter "Defendant"), for violations of Title VII of the Civil Rights Act ("Title VII"), as amended, the Pennsylvania Human Relations Act ("PHRA"), and Section 1981 of the Civil Rights Act. In support thereof, Plaintiff avers as follows:

**<u>THE PARTIES</u>**

1. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.
2. Plaintiff is an adult individual residing in Folcroft, PA.
3. Upon information and belief, Defendant Summation Financial Services LLC is a provider of back office services for Skilled Nursing Facilities and Long-Term Care facilities with a location at 1510 Chester Pike, Eddystone, PA 19022 and corporate headquarters at 479

Oak Glen Road, Howell, NJ 07731.

4. Defendant is an entity engaged in an industry or activity affecting commerce which employs 50 or more employees in all of its offices for each working day during each of 20 or more calendar workweek in the current or preceding year.

5. At all times material hereto, Plaintiff was employed by Defendant for at least twelve hundred and fifty (1,250) hours of service during the twelve-month period prior to requiring leave.

6. At all times relevant hereto, Defendant employed managers, supervisors, agents, and employees who Plaintiff alleges had the authority to make decisions concerning Plaintiff's employment. In making said decisions, these individuals engaged in the pattern and practice of discriminatory treatment, which forms the basis of Plaintiff's allegations in the instant Complaint.

7. At all times relevant hereto, Defendant employed managers, supervisors, agents, and employees who acted directly or indirectly in the interest of the employer. In so acting, these individuals engaged in the pattern and practice of discriminatory treatment, which forms the basis of Plaintiff's allegations in the instant Complaint.

**JURISDICTION AND VENUE**

8. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

9. The Court may properly maintain personal jurisdiction over Defendant because the Defendant's contacts with this state and this judicial district are sufficient for the exercise of jurisdiction and comply with traditional notions of fair play and substantial justice, thus satisfying the standard set forth by the United States Supreme Court in *International Shoe Co. v. Washington*, 326 U.S. 310 (1945) and its progeny.

10. The Court may exercise original subject-matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of federal law.

11. The Court may also maintain supplemental jurisdiction over state law claims set forth herein pursuant to 28 U.S.C. § 1367(a) and Rule 18(a) of the Federal Rules of Civil Procedure because they are sufficiently related to one or more claims within the Court's original jurisdiction that they form part of the same case or controversy.

12. Venue is properly laid in the Eastern District of Pennsylvania pursuant to 28 U.S.C. §§ 1391(b)(1) and 1391(b)(2) because Plaintiff is domiciled in this judicial district, the Defendant is located in this judicial district and because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

**EXHAUSTION OF ADMINISTRATIVE REMEDIES**

13. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

14. Plaintiff exhausted her administrative remedies under Title VII and the PHRA.

15. On or about June 15, 2026, Plaintiff timely filed a Charge of Discrimination ("Charge") with the U.S. Equal Employment Opportunity Commission ("EEOC") alleging race discrimination against Defendant.

16. The Charge was assigned a Charge Number 530-2025-08971 and was dual filed with the Philadelphia Commission on Human Relations ("PCHR").

17. The EEOC issued Plaintiff a Dismissal and Notice of Rights ("Right to Sue") relative to the Charge and that Notice is dated August 10, 2026.

18. Prior to the filing of this action, Plaintiff notified the EEOC of her intent to proceed with a lawsuit in federal court.

19. Plaintiff files the instant Complaint within ninety (90) days of her receipt of her Right to Sue in this matter, as it relates to her federal law claims, and within two (2) years of the issuance of the Right to Sue in this matter as it relates to her PHRA claims.
20. Plaintiff has exhausted her administrative remedies as to the allegations of this Complaint.

## MATERIAL FACTS

## PLAINTIFF'S EMPLOYMENT HISTORY

21. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.
22. Plaintiff is African American.
23. In or around December 2016, Defendant hired Plaintiff in the position of Central Business Office Biller.
24. Plaintiff was well qualified for her position and performed well.
25. Plaintiff was one of only two (2) African American employees, while all of the other employees at Defendant were Caucasian.

## A NEW DIRECTOR OF REVENUE MANAGEMENT STARTED

26. In or around late 2023, Defendant hired Theresa Sutherland (Caucasian) as Director of Revenue Management.

## SUTHERLAND SUBJECTED PLAINTIFF TO DISPARATE TREATMENT BASED ON RACE

27. After Sutherland was hired, Sutherland treated Plaintiff less favorably than Plaintiff's Caucasian coworkers.
28. Sutherland nitpicked Plaintiff's work product and frequently scheduled meetings with Plaintiff about minor issues.
29. Sutherland was rude to Plaintiff in emails and blamed her for problems instead of Plaintiff's Caucasian coworkers.

30. However, Sutherland was friendly toward other employees in group meetings.

31. Sutherland treated Plaintiff as though she was not intelligent and made comments to her such as “if you don’t understand.”

**SUTHERLAND ISSUED PLAINTIFF AN UNWARRANTED DISCIPLINARY WARNING**

32. In or around May 2024, Sutherland issued Plaintiff a disciplinary warning regarding a billing account that Sutherland claimed was incomplete.

33. However, the billing account had been completed.

34. Sutherland did not copy Chrissy Hahn (Caucasian), AR Manager and Plaintiff’s direct supervisor, or Josh Thompson (Caucasian), Chief Financial Officer, on the warning.

35. This disciplinary warning was not discussed again, and it was the first and only formal warning Plaintiff received.

**PLAINTIFF TOOK FAMILY AND MEDICAL LEAVE ACT (“FMLA”) LEAVE**

36. In or around June 2024, Plaintiff took an approved medical leave of absence in the form of Family and Medical Leave Act (“FMLA”) leave.

37. The conditions underlying Plaintiff’s FMLA leave were caused in part by Sutherland’s treatment of her.

38. In or around September 2024, Plaintiff returned to work from her FMLA leave.

**DEFENDANT REASSIGNED PLAINTIFF TO DIFFERENT BUILDINGS AND INCREASED HER WORKLOAD UPON HER RETURN FROM HER FMLA LEAVE**

39. When Plaintiff returned from her FMLA leave, she discovered that her work had not been covered during her absence.

40. Defendant proceeded to reassign her to different buildings and substantially increased her workload.

41. Plaintiff believed that Defendant was setting her up for failure.

**SUTHERLAND CONDUCTED PLAINTIFF'S ANNUAL PERFORMANCE REVIEW**

42. In or around December 2024, Sutherland conducted Plaintiff's annual performance review.

43. Sutherland told Plaintiff that she had asked Thompson and Hahn what kind of worker Plaintiff was and why she was still employed.

44. Thompson and Hahn vouched for Plaintiff.

45. Sutherland stated that she would give Plaintiff more time.

**SUTHERLAND'S DISCRIMINATORY TREATMENT INTENSIFIED UPON HER RETURN FROM FMLA LEAVE**

46. After Plaintiff returned from leave, Sutherland's treatment of Plaintiff worsened.

47. Sutherland continually criticized Plaintiff's work product, held frequent meetings to reprimand her and repeatedly changed Plaintiff's workload.

48. Sutherland threatened Plaintiff with termination and made statements to Plaintiff such as "if you mess this up again, we are going to have to get rid of you", or words to that effect.

49. Sutherland told Plaintiff that she had discussed Plaintiff with Thompson.

50. Thompson did not raise any concerns with Plaintiff's work performance.

**PLAINTIFF TOOK AN APPROVED VACATION**

51. In or around December 2025, Plaintiff took an approved vacation from December 9 to December 16, 2025.

52. Thompson, Sutherland and Hahn approved Plaintiff's vacation request in advance.

53. Under Defendant's protocol, after a vacation is approved, the employee emails Sutherland and the Business Office Managers to confirm the dates.

**PLAINTIFF NOTIFIED THE BUSINESS OFFICE MANAGERS TO CONTACT HAHN IF THERE WERE ANY BILLING QUESTIONS WHILE SHE WAS OUT ON VACATION**

54. On or about December 8, 2025, Plaintiff emailed Andrea Bennett (Caucasian) and Christine Marocchini (Caucasian), Business Officer Managers, and copied Hahn.
55. Plaintiff advised that she would be out of the office and that any billing questions should be directed to Hahn.

**A BILL WAS NOT SENT OUT ON TIME WHILE PLAINTIFF WAS OUT ON VACATION**

56. While Plaintiff was on vacation, a bill was not sent out on time.
57. Hahn was responsible for sending the bill in Plaintiff's absence.
58. Marocchini emailed Hahn and asked why the bill had not gone out.
59. Hahn stated that she did not know.

**SUTHERLAND QUESTIONED PLAINTIFF IF SHE HAD NOTIFIED THE TEAM OF HER VACATION**

60. On or about December 17, 2025, Plaintiff returned to work.
61. Sutherland asked Plaintiff whether she had notified the team of her vacation.
62. Plaintiff confirmed that she had and forwarded her email to Sutherland.
63. Sutherland claimed that the email did not make Hahn aware that the bill had not been sent.

**DEFENDANT TERMINATED PLAINTIFF**

64. Later that day, Sutherland called Plaintiff into a meeting.
65. Plaintiff explained that she had followed protocol.
66. Sutherland falsely accused Plaintiff of not following protocol and terminated Plaintiff's employment.

67. Defendant did not follow its progressive disciplinary policy before terminating Plaintiff.

68. Importantly, Defendant did not discipline or terminate Hahn who was responsible for sending the bill.

69. Defendant discriminated against Plaintiff due to her race and retaliated against her for utilizing her rights under the FMLA in violation of Title VII, the PHRA, Section 1981 and the FMLA.

70. Defendant's acts and/or omissions were willful or performed with reckless disregard to Plaintiff's federal statutorily-protected rights.

**COUNT I – RACE DISCRIMINATION**
**TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED**

71. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

72. Plaintiff is a member of protected classes in that she is African American.

73. Plaintiff was qualified to perform the job for which she was hired.

74. Plaintiff suffered adverse job actions, including, but not limited to termination.

75. Similarly situated people outside of Plaintiff's protected class were treated more favorably than Plaintiff.

76. Circumstances exist related to the above-cited adverse employment actions that give rise to an inference of discrimination.

77. Defendant discriminated against Plaintiff on the basis of race.

78. No legitimate, non-discriminatory reasons exist for the above-cited adverse employment actions that Plaintiff suffered.

79. The reasons cited by Defendant for the above cited adverse employment actions that Plaintiff suffered are pretext for discrimination.

80. Defendant's violation of Plaintiff's rights under Title VII was willful or done with

reckless disregard to Plaintiff's statutorily-protected rights.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

**COUNT II – RACE DISCRIMINATION**
**PENNSYLVANIA HUMAN RELATIONS ACT**

81. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.
82. The foregoing conduct by Defendant constitutes unlawful discrimination against Plaintiff on the basis of her race (African American).
83. As a result of Defendant's unlawful race discrimination, Plaintiff has suffered damages as set forth herein.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

**COUNT III – RACE DISCRIMINATION**
**SECTION 1981**

84. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.
85. Plaintiff is a member of protected classes in that she is African American.
86. Plaintiff was qualified to perform the job for which she was hired.
87. Plaintiff suffered adverse job actions, including, but not limited to termination.
88. Similarly situated people outside of Plaintiff's protected class were treated more favorably than Plaintiff.
89. Circumstances exist related to the above cited adverse employment actions that give rise to an inference of discrimination.
90. Defendant discriminated against Plaintiff on the basis of her protected class.
91. No legitimate, non-discriminatory reasons exist for the above cited adverse employment

actions that Plaintiff suffered.

92. The reasons cited by Defendant for the above cited adverse employment actions that Plaintiff suffered are pretext for discrimination.

93. Defendant's conduct was willful or performed with reckless disregard to her federal statutory rights.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

**COUNT IV – RETALIATION**
**FAMILY AND MEDICAL LEAVE ACT OF 1993, AS AMENDED**

94. Plaintiff incorporates all the above paragraphs as if they were set forth at length herein.

95. Pursuant to 29 U.S.C. § 2611(2)(A) and 29 U.S.C. § 2612(a)(1)(C), Plaintiff was eligible for leave under the FMLA.

96. At all times material, Defendant knew, or should have known, of Plaintiff's need for FMLA Leave to care for her own serious medical conditions.

97. Plaintiff gave Defendant sufficient information to allow it to understand that she needed leave for FMLA-qualifying reasons.

98. The retaliation occurred in the form of the continued implementation of a policy that discourages and interferes with Plaintiff's right to invoke her federally protected rights under the FMLA.

99. As a result of Plaintiff's attempt to invoke her FMLA rights, by requesting and utilizing her FMLA rights, Defendant has retaliated against Plaintiff by terminating her employment.

100. Defendant's motivation for retaliating against Plaintiff was connected causally to Plaintiff's FMLA leave.

101. Defendant has acted in bad faith by retaliating against Plaintiff in violation of the FMLA.

102. As a direct and proximate result of Defendant's discharge of Plaintiff, Plaintiff is and was deprived of economic and non-economic benefits resulting from Defendant's willful and/or non-willful actions including but not limited to: loss of back pay, loss of increase in salary, loss of benefits preceding Plaintiff's filing of the lawsuit, cost of providing care, and double liquidated damages under the FMLA for violations not made in good faith.

103. Plaintiff demands judgment against Defendant for all available equitable relief including, but not limited to: reinstatement to job position, full restoration of all leave and health benefits, to which Plaintiff was entitled, and any additional unpaid leave up to the maximum permitted by the FMLA including but not limited to doubling the damages proven inclusive of all wages, salary, employment benefits or other compensation denied or lost.

104. Plaintiff further demands favorable judgment against Defendant for all interest on the monetary benefits calculated at the prevailing rate, an additional amount equal to those sums, as liquidated damages under §107(a), fees and costs including the allowance of reasonable attorneys' fees, expert witness fees and other costs of the action against Defendant and such other orders and further relief as may be necessary and appropriate to effectuate the objectives of the FMLA.

**WHEREFORE**, Plaintiff demands compensatory and liquidated damages in addition to counsel fees and costs.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, Octavia Green, requests that the Court grant her the following relief against Defendant:

(a) Damages for past and future wage loss;

(b) Compensatory damages for other economic and non-economic harm including, *inter alia*, mental anguish and/or emotional distress;

(c) Punitive damages;

(d) Liquidated damages;

(e) Reasonable attorneys' fees;

(f) Recoverable costs;

(g) Pre and post judgment interest;

(h) An allowance to compensate for negative tax consequences of a lump sum award in a single tax year;

(i) Order Defendants to remove and expunge, or to cause to be removed and expunged, all negative, discriminatory, and/or defamatory memoranda and documentation from Plaintiff's record of employment, including, but not limited, the pre-textual reasons cited for its adverse actions, disciplines, and termination; and

(j) Awarding extraordinary, equitable and/or injunctive relief as permitted by law, equity and the federal statutory provisions sued here under, pursuant to Rules 64 and 65 of the Federal Rules of Civil Procedure.

## JURY TRIAL DEMAND

Demand is hereby made for a trial by jury as to all issues.

## CERTIFICATION

I hereby certify that to the best of my knowledge and belief the above matter in controversy is not the subject of any other action pending in any court or of a pending arbitration proceeding, nor at the present time is any other action or arbitration proceeding contemplated.

**RESPECTFULLY SUBMITTED,**

**KOLLER LAW, LLC**

Date: November 9, 2026 **By:** ***/s/ David M. Koller, Esq.***

David M. Koller, Esquire
Jordan D. Santo, Esquire
2043 Locust Street, Suite 1B
Philadelphia, PA 19103
215-545-8917
davidk@kollerlawfirm.com
jordans@kollerlawfirm.com

*Counsel for Plaintiff*